IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| LOREN PAUL KING AND STEPHANIE MAY KING,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>KINSEY'S ARCHERY PRODUCTS, INC. d/b/a OCTOBER MOUNTAIN PRODUCTS, INC., WEST-BOAO SCIENCE & TECHNOLOGY CO., LTD., and AMAZON.COM SERVICES, LLC,<br><br>　　　　　　Defendants. | Case No. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Loren Paul King and Stephanie May King, by and through their counsel Raymond J. Trueblood-Konz of Pritzker Hageman, P.A., and James M. Portelli of Moore & Portelli, for their Complaint against Defendants, state and allege as follows:

**NATURE OF THE CASE**

1. This action arises out of a defective bow scale manufactured, designed, marketed, sold, and/or distributed by Defendants Kinsey's Archery Products, Inc. d/b/a October Mountain Products ("OMP"), West-Boao Science & Technology Co., Ltd. ("West-Boao"), and Amazon.com Services, LLC ("Amazon").

2. Plaintiff Loren King used the product, without modification, as instructed, and sustained a foreseeable injury to his eye when the mounting ring of the bow scale split open, flew off, and hit him in the face.

3. As a result of the latent defect in Defendants' acts, conduct, and omissions described herein, Plaintiff Loren King has no natural lens in his left eye and continues to suffer a

variety of significant disabilities including, but not limited to, impaired vision, impaired balance and coordination, impaired depth perception, light sensitivity, and a future risk of glaucoma, blindness, and other complications, all of which resulted from Defendants' defective bow scale.

4. As a result of the latent defect in Defendants' bow scale and her husband's resulting injuries, Plaintiff Stephanie King has sustained loss of companionship, society, services, and other benefits of her marriage to Plaintiff Loren King.

5. Plaintiffs seek to recover all of the damages caused by Defendants.

## PARTIES

6. Plaintiffs Loren Paul King and Stephanie May King are citizens and residents of the State of Indiana.

7. Defendant OMP is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in Mount Joy, Pennsylvania. OMP routinely did business in, cultivated and served a market in, received economic benefit from, and/or purposely availed itself of the privileges of conducting activities in the State of Indiana. This action arises out of, is connected to, or relates to OMP's contacts in Indiana.

8. OMP designs, manufactures, markets, distributes, and sells archery products, including the bow scale at issue. It maintains a network of 25 licensed dealers within the State of Indiana and also markets and sells its products to Indiana citizens through online retailers such as Amazon.

9. Defendant West-Boao is an entity organized and existing under the laws of China, with its principal place of business in China. Upon information and belief, West-Boao routinely did business in, cultivated and served a market in, received economic benefit from, and/or

purposely availed itself of the privileges of conducting activities in the State of Indiana. This action arises out of, is connected to, or relates to West-Boao's contacts with Indiana.

10. Upon information and belief, West-Boao manufactures products—including scales—to clients' specifications. West-Boao manufactured the defective bow scale at issue on behalf of and pursuant to directions and specifications it received from OMP.

11. Defendant Amazon is a corporation organized and existing under the laws of Delaware, with its principal place of business in Seattle, Washington. Amazon routinely did business in, cultivated and served a market in, received economic benefit from, and/or purposely availed itself of the privileges of conducting activities in the State of Indiana. This action arises out, is connected to, or relates to Amazon's contacts in Indiana.

12. Amazon is an online retailer of various products, including the defective bow scale at issue. It sold and distributed the defective bow scale at issue on behalf of OMP.

13. At all relevant times, each Defendant was the agent, servant, partner, co-conspirator, and/or joint venturer of the other Defendants and was at all times operating and acting within the purpose and scope of this agency, service, employment, partnership, conspiracy, and/or joint venture, knowing that their collective conduct would or reasonably could lead to harm Plaintiffs and those similarly situated.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the Defendants each have the requisite minimum contacts with the State of Indiana such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

15. Venue in the present judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial portion of the events or omissions giving rise to the Plaintiffs' claims and causes of action occurred here, and because the Defendants were subject to personal jurisdiction in this district at the time that this action was commenced.

## FACTUAL BACKGROUND

### The Defective Bow Scale

16. OMP markets itself as the "archery authority." It designs, manufactures, advertises, distributes, and/or sells archery products that include, but are not limited to, bows and bow scales.

17. Bow scales measure a bow's "draw weight," which is the force it takes to pull the string on a bow to its fully drawn position.

18. Among the archery products OMP sold in and around March of 2016 was a M100 Digital Hanging Bow Scale, model number 37313 (hereinafter "M-100 Bow Scale").

19. The M-100 Bow Scale is designed to hang from the ceiling by a mounting ring at the top of the scale. The Scale is mounted at eye level so the user can see the Scale's digital readout. At the bottom of the Scale is a hook to which the user attaches a bow. To measure the draw weight, the user attaches the bow to the Scale and presses down on the bow. Doing so can cause the user to naturally lean forward, toward the Scale, as he or she presses downward.

20. To ensure accurate readings, a user may measure the draw weight more than once.

21. OMP and/or West-Boao designed the M-100 Bow Scale.

22. Upon information and belief, OMP created or furnished West-Boao with specifications for the M-100 Bow Scale.

23. West-Boao assembled, fabricated, and/or manufactured the M-100 Bow Scale. OMP then imported the M-100 Bow Scale, which bore OMP's trademark and trade dress, and sold

it to American consumers through brick-and-mortar retailers, online retailers such as Amazon, and through its own website and catalogs.

24. In selling the M-100 Bow Scale under its own name, OMP gave customers no indication of that West-Boao had manufactured the M-100 Bow Scale.

25. West-Boao failed to adequately test the M-100 Bow Scale to ensure the product could be safely used without needless risk of physical injury to the user.

26. OMP failed to adequately test the M-100 Bow Scale—and failed to ensure West-Boao adequately tested the M-100 Bow Scale—to ensure the product could be safely used without needless risk of physical injury to the user.

27. M-100 Bow Scales sold by defendants from late November 2015 through March 2016 were defective. Specifically, because the mounting ring was not welded or crimped closed or otherwise secured after it was installed, but was instead installed with a gap between the two ends of the ring, the mounting ring had an unreasonable tendency to split open under foreseeable use, causing the ring to pop out and off of the Scale, which posed impact and laceration hazards to users and bystanders.



28. A reasonable design or manufacturing alternative was to crimp or weld the ends of the mounting ring together after installation, which would have ensured the mounting ring was fastened security and would not split open. OMP and West-Boao contemplated this design change before Plaintiff Loren King was injured. OMP and/or West-Boao tested this design change and felt "confident that the modification will remedy the problem."

29. Prior to March 19, 2016, OMP notified Amazon that the M-100 Bow Scale was defective and should be returned or destroyed.

30. Prior to March 19, 2016, each Defendant knew that the M-100 Bow Scale was defective.

31. Despite their knowledge that their M-100 Bow Scale posed an unreasonable risk of injury to unsuspecting users, Defendants continued to sell the defective M-100 Bow Scale in March of 2016 without appropriate corrective measures.

32. Before or around the time the defective M-100 Bow Scale was sold to Plaintiffs, OMP began the process of recalling the M-100 Bow Scale at issue.

33. As part of this process, OMP created social media posts stating:

> At October Mountain Products, nothing is more important to us than our customers (sic) safety. We recently discovered that our M100 Digital Bow Scales were not manufactured to our standards and are issuing a recall. The mounting ring on the scale can break during use and possibly cause harm to the user. This is not acceptable and we apologize for the inconvenience.

34. OMP "corrected" 45 of the defective M-100 Bow Scale as part of its recall. However, 570 defective M-100 Bow Scale were left uncorrected, despite Defendants' knowledge and the foreseeability that unsuspecting consumers might be needlessly injured.

35. Despite their knowledge that their M-100 Bow Scale posed an unreasonable risk of injury to unsuspecting users, Defendants did not retrieve all of their defective M-100 Bow Scales or ensure that each defective M-100 Bow Scales had been returned, destroyed, not sold, or modified to correct the defect.

**Defendants' Defective M-100 Bow Scale Caused a Needless Injury**

36. Plaintiff Loren King is an avid outdoorsman and archer.

37. On or Around March 19, 2016, Loren King purchases one of Defendants' defective M-100 Bow Scale through Defendant Amazon's online store, using his wife's Amazon account.

38. At the time Plaintiffs purchased the M-100 Bow Scale, Defendants already knew that the bow scale was defective as described above.

39. The Defendants sold the defective M-100 Bow Scale to Plaintiffs despite their knowledge of the unreasonable risk of harm.

40. Defendants did not take reasonable measures to ensure that the defective M-100 Bow Scale they sold to Plaintiffs was returned or destroyed.

41. Despite their knowledge of the M-100 Bow Scale's defectiveness and the unreasonable risk of injury to its customers, Defendants did not take reasonable measures to conspicuously or effectively warn Plaintiffs of the latent risk of serious injury associated with use of the defective M-100 Bow Scale.

42. Defendants failed to provide instructions or warnings to Plaintiffs regarding the above-described defect, the unreasonable risk of injury associated therewith, or steps that could be taken to eliminate or mitigate the unreasonable risk of injury, either on, before, or after March 19, 2016.

43. On or around October 2, 2020, Plaintiff Loren King attempted to use the defective M-100 Bow Scale at his home in Lafayette, Indiana, to test the draw weight of his friend's bow. Loren hooked his friend's bow to the M-100 Bow Scale and pressed down, as instructed by OMP. The first time, the Scale showed that the bow had a draw weight of approximately 65 pounds.

44. Plaintiff Loren King then attempted to re-measure the draw weight to confirm the accuracy of the first reading. As Mr. King pressed down on the bow, however, the mounting ring of the defective M-100 Bow Scale split open, shot off the product, and hit Loren King in the face and left eye.

45. The mounting ring of the M-100 Bow Scale failed in the same manner Defendants had identified over four years before Plaintiff Loren King's injury.

46. When the mounting ring hit Plaintiff Loren King in the face, it set a shock waive through Mr. King's left eye, dislocating the lens and causing other permanent injuries.

47. To date, Plaintiff Loren King has not recovered from his injuries. He continues to experience loss of sight, impaired balance and mobility, and other harms and losses.

48. As a direct and proximate result of using Defendants' unreasonably dangerous M-100 Bow Scale as directed by Defendants, Plaintiff Loren King has suffered, and will continue to suffer, the following injuries and damages:

   a. Past and future medical, optometrist, ophthalmologist, and other similar treatment expenses;

   b. Past and future physical, mental, and emotional pain and suffering, including a diminished enjoyment of life;

   c. Past and future business losses associated with Plaintiff Loren King's impaired ability to work; and

    d.  Other harms, losses, and injuries to be proved at trial.

## COUNT I
## MANUFACTURING DEFECT

49. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

50. The term "manufacturer" for purposes of the Indiana Product Liability Act, Ind. Code § 34-20-1-1 et seq. ("IPLA") means a person or an entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer. The term "Manufacturer" also includes a seller who:

    a.  has actual knowledge of a defect in a product;

    b.  creates and furnishes a manufacturer with specifications relevant to the alleged defect for producing the product or who otherwise exercises some significant control over all or a portion of the manufacturing process; and/or

    c.  alters or modifies the product in any significant manner after the product comes into the seller's possession and before it is sold to the ultimate user or consumer.

51. At all relevant times, Defendants were in the business of designing, manufacturing, distributing, marketing, and selling archery products including the defective M-100 Bow Scale described above.

52. West-Boao manufactured the defective M-100 Bow Scale and is therefore a "manufacturer" under the IPLA.

53. OMP is also considered a "manufacturer" of the M-100 Bow Scale under the IPLA because:

    a.  It had knowledge of the defect at issue;

      b. It created or furnished West-Boao with specifications relevant to the defect and otherwise exercised some control over all or a portion of the manufacturing process; and

      c. For other reasons that may be revealed in the course of discovery.

54. Amazon is also considered a "manufacturer" of the M-100 Bow Scale under the IPLA at issue because:

      a. It had knowledge of the defect at issue; and

      b. For other reasons that may be revealed in the course of discovery.

55. In addition, under the IPLA, if a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of IPLA, the manufacturer of the product.

56. At all times material hereto, OMP was a principal distributor or seller of the defective M-100 Bow Scale.

57. Upon information and belief, at all times material hereto, Amazon was a principal distributor of the defective M-100 Bow Scale.

58. Plaintiffs believe that this Court has jurisdiction over West-Boao but has not yet had the benefit of discovery. If, however, this Court does not have jurisdiction over West-Boao, then OMP and/or Amazon are considered a "manufacturer" of the M-100 Bow Scale for purposes of the IPLA.

59. Defendants, collectively and individually, designed, manufactured, distributed, marketed, and/or sold the defective M-100 Bow Scale that caused Plaintiff Loren King's injuries.

60.	The defective M-100 Bow Scale that caused Plaintiff Loren King's injury was a "product" within the meaning of Ind. Code § 34-6-2-114 because it was produced, manufactured, and supplied for introduction into the stream of commerce, and was intended for sale to persons for personal use.

61.	Plaintiffs were "consumers" for purposes of the IPLA.

62.	The M-100 Bow Scale that caused Plaintiff Loren King's injury was, at the time that it left the Defendants' control, defective within the meaning of Ind. Code § 34-20-4-1. Specifically, the product was unreasonably dangerous to expected users and consumers because its mounting ring had an unreasonable tendency to fail under the Scale's normal, intended, foreseeable, and reasonably expectable use.

63.	Defendants' M-100 Bow Scale was unreasonably dangerous because the normal use of the M-100 Bow Scale exposed users and consumers to a risk of physical harm to an extent beyond what an ordinary consumer would contemplate.

64.	Defendants' product was defective in its manufacture because the mounting ring had an unreasonable tendency to fail under its intended and normal use, contrary to its design.

65.	Because the mounting ring and M-100 Bow Scale were defectively manufactured, Defendants are strictly liable for Plaintiffs' damages.

66.	Plaintiffs purchased and used the product without substantial alteration in its condition.

67.	Plaintiff Loren King's use of the M-100 Bow Scale was reasonably foreseeable to Defendants, as was his resulting injury.

68.	Plaintiff Loren King did not misuse the M-100 Bow Scale on October 2, 2020. Rather, he used the M-100 Bow Scale in accordance with Defendants' directions and instructions.

69. On October 2, 2022, Loren King was not aware of the M-100 Bow Scale's defectiveness. Because he did not know the mounting ring could split open under normal use, and because he did not know or apricate the risk of injury associated with Defendants' M-100 Bow Scale, Plaintiff Loren King did not, and could not, incur or assume the risk of injury.

70. As a direct and proximate result of Defendants' defective M-100 Bow Scale, Plaintiff Loren King suffered the injuries and damages set forth in the preceding paragraphs.

## COUNT II
## DESIGN DEFECT

71. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

72. Defendants had a duty to use reasonable care in designing the M-100 Bow Scale.

73. To the extent Defendants' design for the M-100 Bow Scale specified that the mounting ring should not be welded, crimped, or otherwise secured, then the design was defective because it created an unreasonable risk of injury as described above.

74. Defendants did not use reasonable care under the circumstances in designing the M-100 Bow Scale.

75. The design Defendants' M-100 Bow Scale did not comply with the "state of the art."

76. In its submissions to the United States Consumer Product Safety Commission, OMP identified a feasible and reasonable design alternative that would have prevented Plaintiff Loren King's injuries.

77. As a direct and proximate result of Defendants' negligence, Plaintiff Loren King suffered the injuries and damages set forth in the preceding paragraphs.

## COUNT III
## FAILURE TO WARN

78. Plaintiff incorporates all of the preceding paragraphs as if fully set forth herein.

79. Defendants had a duty to provide adequate instructions for safe use of the M-100 Bow Scale, and to provide warnings as to any latent danger inherent in use of the M-100 Bow Scale.

80. Defendants' duty to warn was nondelegable.

81. Defendants breached their duty by failing to warn Plaintiffs of the defect and resulting risk of injury described above, and by failing to provide adequate direction and instructions that would have allowed Plaintiff Loren King to mitigate or eliminate the risk of harm.

82. As a direct and proximate result of Defendants' negligence, Plaintiff used the defective M-100 Bow Scale as instructed, years after Defendants determined such use was unsafe.

83. As a direct and proximate result of Defendants' negligence, Plaintiff Loren King sustained the injuries and damages set forth in the preceding paragraphs.

## COUNT IV
## LOSS OF CONSORTIUM

84. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

85. At all times mentioned, Plaintiff Loren King was married to Plaintiff Stephanie King.

86. Plaintiff Stephanie King was and is entitled to the marital society, consortium, companionship, guidance, comfort, love, support, services, and affection of Plaintiff Loren King.

87. As a result of Defendants' acts and omissions and Plaintiff Loren King's resulting injuries, Plaintiff Stephanie King has been, and will continue to be, deprived of the marital society, consortium, companionship, guidance, comfort, love, support, services, and affection of Plaintiff Loren King.

## COUNT V

**Punitive Damages**

88. Plaintiffs incorporate all of the preceding paragraphs as if fully set forth herein.

89. The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, show willful and wanton misconduct, malice, fraud, oppression, and/ gross negligence. These acts, conduct, and omissions were not the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other such non-iniquitous human failing.

90. Defendants committed the acts and omissions described herein with heedless indifference to the safety of Plaintiff Loren King and other consumers.

91. Defendants sold the M-100 Bow Scale at issue to Plaintiff Loren King despite their knowledge of the defect and despite their knowledge that the defective M-100 Bow Scale might cause needless injuries under intended, foreseeable, and reasonably expectable use.

92. Defendants knew or should have know that they sold a defective M-100 Bow Scale to Plaintiffs but failed to take adequate measures to ensure Plaintiffs were aware that that the M-100 Bow Scale was not safe for use, was defective, and that the Scale should be returned to Defendants, destroyed, or repaired to correct the defective mounting ring.

93. By the acts and omissions set forth above, Defendants subjected Plaintiff Loren King and other similarly situated consumers to probable injury, with an awareness of such impending danger and with heedless and/or reckless indifference of the consequences. Accordingly, an award of punitive or exemplary damages is appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants on each of their Causes of Action as follows:

1. Compensation for all general, special, incidental, consequential, and derivative damages suffered by Plaintiffs as a result of the Defendants' misconduct;

2. Prejudgment interest;

3. Taxable costs and disbursements;

4. Punitive or exemplary damages; and

5. Such other additional and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demands trial by jury as to all issues.

Respectfully submitted,

 /s/ James M. Portelli
James M. Portelli (Attorney No. 17503-53)
Moore & Portelli
1449 East 84th Place
Merrillville, Indiana 46410
Phone:  (219) 750-9540
Fax:  (219) 750-9263
Email:  jportelli@mooreandportelli.com

And

Raymond J. Trueblood-Konz (MN # 0391236)
*Pro Hac Vice Application Forthcoming*
Pritzker Hageman, P.A.
45 South 7th Street, Suite 2950
Minneapolis, Minnesota 55402
Phone: (612) 338-0202
Fax: (612) 338-0104
Email:  raymond@pritzkerlaw.com

*Attorneys for Plaintiffs*